# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### FORT WAYNE DIVISION

| | |
|---|---|
| BRUCE A. TRIGG, | ) |
| | ) |
| Plaintiff, | ) |
| | )    CAUSE NO. 1:13-CV-344 |
| v. | ) |
| | ) |
| FORT WAYNE CITY OF POLICE | ) |
| DEPARTMENT, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## OPINION AND ORDER

This matter is before the Court on the: (1) Verified Motion for Attorney Fees and Mileage, filed by the plaintiff, Bruce A. Trigg, on June 10, 2015 (DE #20); (2) Defendants' Motion for Summary Judgment and Designation of Evidence, filed by the defendants, the City of Fort Wayne, *et al.*, on August 21, 2015 (DE #29); and (3) Defendants' Motion to Strike Portions of Bruce A. Trigg's Affidavit, filed by the defendants, the City of Fort Wayne, *et al.*, on October 5, 2015 (DE #37). For the reasons set forth below, the Motion for Attorney Fees and Mileage (DE #20) is **DENIED**, the Motion for Summary Judgment (DE #29) is **GRANTED**, and the Motion to Strike (DE #37) is **DENIED**. All of the plaintiff's claims are **DISMISSED WITH PREJUDICE**. The Clerk is **DIRECTED** to close this case.

On November 1, 2013, the plaintiff, Bruce A. Trigg ("Trigg"), filed a complaint in the Allen Superior Court against the City of Fort Wayne, the Fort Wayne Police Department, and Fort Wayne Police Officer Anthony Shefferly (collectively, "Defendants"), bringing claims pursuant to 42 U.S.C. sections 1983, 1985, and 1988 for violations of his Fourth and Fourteenth Amendment rights along with several state law claims. (DE #1.) Specifically, Trigg alleges that he was falsely imprisoned when he was unlawfully detained by Fort Wayne Police Officer Anthony Shefferly ("Officer Shefferly") and transported to the Allen County Jail, "where he was booked and locked up for 34 days." (*Id*. at p. 3.) In his complaint, Trigg references "deprivation of his liberty, mental anguish, humiliation, shock, stress, embarrassment, false arrest, battered (sic) defamation, negligent infliction of emotional distress, intentional infliction of mental distress and other damages and injuries yet to be determined." (*Id*.) Trigg claims that all actions by Officer Shefferly were in reckless disregard of his constitutional rights. (*Id*.) The case was removed to this Court by Defendants on December 2, 2013. (DE #2.) Defendants filed their answer on December 9, 2013. (DE #7.) After the discovery period had concluded, this Court set the matter for a status/scheduling conference on January 23, 2015, at 1:00 PM (CST) in the United States District Court located in Hammond, Indiana

before the undersigned.  (DE #15.)  The docket entry directed that
"[c]ounsel for parties [were] required to attend this conference in
person."  (*Id.*)  On the day of the status/scheduling conference,
Trigg appeared in person with his attorney, Samuel L. Bolinger
("Attorney Bolinger"), but counsel for Defendants did not appear in
person as previously ordered.  (DE #16.)  Some time after the
status/scheduling conference was scheduled to begin, the Court was
able to contact counsel for Defendants, attorney Carolyn M. Trier
("Attorney Trier"), via telephone, and the conference took place
telephonically with the Court advising the parties that the Court
reserved the right to issue sanctions against Defendants *sua sponte*
for failure to appear in person.  (*Id.*)

On June 10, 2015, Trigg filed the instant motion for attorney
fees and mileage based on Attorney Trier's failure to appear in
person for the status/scheduling conference.  (DE #20.)  Defendants
filed a response on July 2, 2015.  (DE #23.)  Trigg's reply was
filed on July 7, 2015.  (DE #24.)

On August 21, 2015, after receiving permission from the Court
for filing beyond the dispositive motion deadline (see DEs #26 &
#27), Defendants filed the instant motion for summary judgment.
(DE #29.)  Trigg filed his response in opposition on September 21,
2015.  (DE #33.)  On October 5, 2015, Defendants filed a reply to
the motion for summary judgment (DE #35), along with the instant

motion to strike (DE #37).  Trigg failed to file a response to the motion to strike.  Thus, all motions are now ripe for adjudication.


MOTION FOR ATTORNEY FEES AND MILEAGE

Federal Rule of Civil Procedure 16(f) discusses sanctions and provides that a court may, upon motion or *sua sponte*, "issue any just orders . . . if a party or its attorney . . . fails to appear at a scheduling or other pretrial conference . . . [or] fails to obey a scheduling or other pretrial order."  Fed. R. Civ. P. 16(f)(1).  Rule 16(f) also instructs that:

> [i]nstead of or in addition to any other sanction, the court must order the party, its attorney, or both to pay the reasonable expenses—including attorney's fees—incurred because of any noncompliance with this rule, unless the noncompliance was substantially justified or other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 16(f)(2).

Trigg, through Attorney Bolinger, has filed the instant motion for attorney fees and mileage, arguing that as a result of Defendants' failure to appear in person for the status/scheduling conference that was set by this Court for January 23, 2015, at 1:00 PM (CST),[1] Trigg and Attorney Bolinger "made the conference for naught" and incurred time and mileage costs in the amount of $1,368.16.  (DE #20, pp. 1-2.)  Defendants filed a response,

---

[1]  The Court's notice for the status/scheduling conference states that "[c]ounsel for parties are required to attend this conference in person."  (DE #15.)

4

including an affidavit of Attorney Trier, stating that, due to apparent difficulties with the her email system and/or the calendering of CM/ECF notifications, Attorney Trier was unaware of the status/scheduling conference until she received a telephone call from the Court's chambers inquiring why she was not personally present. (DE #23, pp. 1-4; DE #23-1.) Defendants submit that Attorney Trier's failure to personally appear was "the result of an honest mistake and not due to any intentional failure on her part to comply with the orders of this Court." (DE #23, p. 4.) Defendants argue that the Trigg's request for attorney fees and mileage should be denied because she was present telephonically and all matters that the Court intended to discuss at the status/scheduling conference were fully addressed. (*Id.*)

The Court agrees with Defendants. While it is not entirely clear that Attorney Trier's mistake was "substantially justified," the Court finds that the circumstances surrounding her failure to appear in person make an award of expenses in this case unjust. Specifically, because the status/scheduling conference was ultimately still held on January 23, 2015 (albeit with Attorney Trier appearing telephonically), and all business was conducted as intended (i.e. discussing the status of the case as related to mediation and potential trial dates), neither Trigg himself (who was never required by the Court to be in attendance at the conference) nor Attorney Bolinger were prejudiced in any

significant way. Additionally, based on the reasons set forth in Attorney Trier's affidavit, the Court acknowledges that her failure to appear in person seems to have been an honest mistake rather than an intentional decision to ignore the orders of this Court. Therefore, the motion for attorney fees and mileage is denied. That said, Attorney Trier is cautioned that any similar future failures before this Court will be viewed with extreme disfavor.


<u>MOTION TO STRIKE</u>

In reference to a motion for summary judgment, "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Additionally, Federal Rule of Civil Procedure 56(c)(4) provides that "[a]n affidavit or declaration used to support or oppose a motion [for summary judgment] must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Thus, the following statements do not comply with Rule 56(c) and should be disregarded: (1) conclusory allegations lacking supporting evidence; (2) legal argument; (3) self-serving statements without factual support in the record; (4) inferences or opinions not grounded in observation or other first-hand experience; and (5) mere speculation or conjecture. *Heltzel v. Dutchmen Mfg., Inc.,*

No. 3:06-CV-0227, 2007 WL 4556735, at *4 (N.D. Ind. Dec. 20, 2007) (citations omitted). Defendants have moved to strike several of the statements contained in Trigg's affidavit, arguing that one statement contradicts Trigg's prior sworn deposition testimony, and several others are irrelevant to the matters at hand.

It is the function of the Court, with or without a motion to strike, to carefully review the evidence and to eliminate from consideration any argument, conclusions, and assertions unsupported by the documented evidence of record offered in support of the statement. See, e.g., *S.E.C. v. KPMG LLP*, 412 F.Supp.2d 349, 392 (S.D.N.Y. 2006); *Sullivan v. Henry Smid Plumbing & Heating Co.*, Inc., No. 04 C 5167, 05 C 2253, 2006 WL 980740, at *2 n.2 (N.D. Ill. Apr. 10, 2006); *Tibbetts v. RadioShack Corp.*, No. 03 C 2249, 2004 WL 2203418, at *16 (N.D. Ill. Sept. 29, 2004); *Rosado v. Taylor*, 324 F.Supp.2d 917, 920 n.1 (N.D. Ind. 2004). Motions to strike are heavily disfavored, and are usually only granted in circumstances where the contested evidence causes prejudice to the moving party. *Kuntzman v. Wal-Mart*, 673 F.Supp.2d 690, 695 (N.D. Ind. 2009); *Gaskin v. Sharp Elec. Corp.*, No. 2:05-CV-303, 2007 WL 2228594, at *1 (N.D. Ind. July 30, 2007). When ruling on the instant motion for summary judgment, the Court is capable of sifting through the evidence and considering it under the applicable federal rules and caselaw, giving each statement the

credit to which it is due.   Therefore, the motion to strike is **DENIED** as unnecessary.


MOTION FOR SUMMARY JUDGMENT

     Standard

     Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  Not every dispute between the parties makes summary judgment inappropriate; "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id*.  To determine whether a genuine dispute of material fact exists, the Court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor.  See *Ogden v. Atterholt*, 606 F.3d 355, 358 (7th Cir. 2010). However, "a court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) (citations omitted).

A party opposing a properly supported summary judgment motion may not rely on allegations in his own pleading but rather must "marshal and present the court with the evidence [he] contends will prove [his] case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). "[I]nferences relying on mere speculation or conjecture will not suffice." *Stephens v. Erickson*, 569 F.3d 779, 786 (7th Cir. 2009) (citation omitted). If the non-moving party fails to establish the existence of an essential element on which he bears the burden of proof at trial, summary judgment is proper. See *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006).

Initial Matters

As an initial matter, the Court notes that Trigg has conceded the following in his response brief: any excessive force claims, all claims arising under the Fourteenth Amendment, conspiracy claims under 42 U.S.C. section 1985, any failure to intervene claims, any claims of battery against Officer Shefferly, all defamation claims, and all claims for punitive damages. Therefore, the aforementioned claims are **DISMISSED WITH PREJUDICE**. Additionally, Trigg has conceded that Officer Shefferly is entitled to qualified immunity and immunity under the Indiana Tort Claims Act ("ITCA"). Officer Shefferly's immunity is duly noted by this

Court.  Putting the immunity issue to the side, the rest of this
Court's order will deal with only those claims that remain pending.

Next, the Court notes that Defendants' statement of undisputed
material facts consists of a recitation of Officer Shefferly's
relevant affidavit testimony, excerpts from Trigg's complaint and
deposition testimony, and a description of the Fort Wayne Police
Department ("FWPD") motor vehicle tow and inventory policy.  (See
DE #30, pp. 2-5.)  Defendants accurately cite to the record in
support of their statement.  (DE #29-1 through DE #29-4.)  For his
statement of disputed material facts, Trigg has simply cut and
pasted Defendants' statement of undisputed material facts as it
pertains to Officer Shefferly's affidavit and his own complaint; he
then subsequently added what appears to be his version of events
regarding the traffic stop and arrest as set forth in his own
affidavit.  (DE #34, pp. 1-5; see also DE #33-1.)  However, Trigg
has not cited to the record at all for this later portion of his
statement.  (DE #34, pp. 4-5.)  It would be within the Court's
discretion to simply ignore all assertions without appropriate
citation to the record, but, in the interests of justice, the Court
has considered the relevant and not otherwise inadmissable portions
of Trigg's affidavit in its analysis.

Because many of the facts are no longer material due to
Trigg's concessions described above, the Court will not set forth
a separate section of facts in this order; rather, the material

facts will be referenced and cited in the appropriate analysis sections. Briefly, the Court notes that the following facts are undisputed. On November 14, 2012, at approximately 5:42 PM, Trigg was pulled over at the corner of Wildwood Avenue and Clinton Street by Officer Shefferly. After it was determined that Trigg did not have a valid driver's license, Officer Shefferly removed Trigg from the vehicle and conducted a pat down search for weapons and an inventory of the vehicle prior to it being towed. Trigg was ultimately arrested for operating a vehicle without a license while being a Habitual Traffic Violator - Life and for possession of a Schedule III controlled substance. He was incarcerated in the Allen County Jail for 34 days.

Fourth Amendment Unlawful Arrest

The Fourth Amendment protects against unreasonable searches and seizures, and this protection has been extended to the states through the Fourteenth Amendment to the United States Constitution. *Mapp v. Ohio*, 367 U.S. 643, 655 (1961); U.S. Const. Amend. IV. "[T]he existence of probable cause renders both traffic stops and resulting warrantless arrests permissible." *Jones v. City of Elkhart, Ind.*, 737 F.3d 1107, 1114 (7th Cir. 2013). Probable cause is a "fluid" concept, and the court must evaluate whether "the facts and circumstances within the officer's knowledge are sufficient to warrant a prudent person, or one of reasonable

caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." Jones, 737 F.3d at 1114 (citing *Thayer v. Chiczewski*, 705 F.3d 237, 246 (7th Cir. 2012)). In other words, the standard is an objective one viewed from the perspective of a "reasonable person in the position of the officer." *Id*. In the context of a decision to stop an automobile, probable cause is present when "the circumstances confronting a police officer support the reasonable belief that a driver has committed even a minor traffic offense." *U.S. v. Cashman*, 216 F.3d 582, 586 (7th Cir. 2000). The Seventh Circuit has held that an officer's observation of a vehicle failing to use a turn signal establishes probable cause for a traffic stop. See *Williams v. Brooks*, 809 F.3d 936, 943 (7th Cir. 2016); *U.S. v. Hernandez-Rivas*, 513 F.3d 753, 759 (7th Cir. 2008).

Here, Officer Shefferly's affidavit states that, while on patrol on the evening in question, he observed a Mercedes Benz traveling through several alleyways located just east of Barr Street in Fort Wayne, Indiana. He then observed the vehicle come out onto Barr Street and turn westbound on Wildwood Avenue without using a turn signal. Officer Shefferly states that he activated his emergency red/blue lights and initiated a traffic stop at the corner of Wildwood Avenue and Clinton Street based on the lack of proper signaling when the vehicle initially turned from Barr Street

onto Wildwood Avenue.[2] (See DE #29-1, p. 1.) Officer Shefferly's supplemental narrative indicates the same. (*Id.* at 4.) In support of these details, Defendants have also submitted a DVD containing Officer Shefferly's in-car video for incident number 12F171402 on November 14, 2012. (DE #28.) In his response brief and affidavit, Trigg admits that he was later identified as the driver of the vehicle seen in the video that was pulled over by Officer Shefferly at the corner of Wildwood Avenue and Clinton Street. (DE #34, p. 6; DE #33-1, pp. 1-2.) However, he claims that the video doesn't pick up the lack of turn signal at the corner of Barr Street and Wildwood Avenue, and he states that that particular vehicle "is not my car." (*Id.*) As such, Trigg argues that "[t]he traffic law violation did not exist or justif[y] Officer Shefferly's initial stop" and that "Officer Shefferly did not have probable cause to believe that Trigg had committed a traffic violation." (DE #34, pp. 6-7.)

Trigg's arguments fail. Seventh Circuit case law is clear that "[w]hen the evidence includes a videotape of the relevant events, the Court should not adopt the nonmoving party's version of the events when that version is blatantly contradicted by the videotape." *Williams*, 809 F.3d at 942 (citing *Scott v. Harris*, 550 U.S. 372, 379 (2007)). As in *Williams*, despite Trigg's arguments

---

[2] A failure to signal a turn violates Indiana Code 9-21-8-25 which states: "A signal of intention to turn right or left shall be given continuously during not less than the last two hundred (200) feet traveled by a vehicle before turning or changing lanes."

13

to the contrary, the video clearly depicts the incident. Even if the vehicle driving in the alleyways cannot be definitively identified as Trigg's car from the video itself, it is abundantly clear that the vehicle on Barr Street that turned westbound (or right) onto Wildwood Avenue is the same car that was pulled over by Officer Shefferly at the corner of Wildwood Avenue and Clinton Street -- a car which Trigg admits *is* his.[3] The video shows that Officer Shefferly's police cruiser is located directly behind the vehicle in question as it travels down Barr Street and turns right onto Wildwood Avenue. As Officer Shefferly continues to follow that vehicle and makes a right onto Wildwood Avenue as well, no other cars come between them. Officer Shefferly remains directly behind the vehicle in question until it is pulled over at the Corner of Wildwood Avenue and Clinton Street.

Furthermore, it is also abundantly clear from the video that the vehicle in front of Officer Shefferly's cruiser on Barr Street failed to use a signal when it turned right onto Wildwood Avenue. The video shows the vehicle's turn signal flashing as it was attempting to turn left from Wildwood Avenue onto Clinton Street (seconds before Officer Shefferly activated the police cruiser's emergency lights); however, it does not depict similar flashing as

---

[3] Officer Shefferly's police cruiser turns onto Barr Street at approximately the forty-three second mark of the video, turns right onto Wildwood Avenue at approximately the fifty-five second mark of the video, and activates the emergency lights at approximately the one-minute and three second mark of the video.

the vehicle turned right onto Wildwood Avenue from Barr Street.[4]
The difference is obvious, and no objective viewer could find
otherwise. As such, it is undisputed that Officer Shefferly had
probable cause for the traffic stop and could lawfully arrest Trigg
for that traffic infraction.[5] No reasonable jury could find that
this was an unlawful stop and arrest. See *Williams*, 809 F.3d at
942-43 (citing *Jones*, 737 F.3d at 1114).

Trigg's remaining cursory arguments -- that he was
"travel[ing] on a Moorish American Right to Travel" and that his
state court case arising from the November 12, 2012, arrest was
later dismissed -- are wholly without merit. See *Wos v. Sheahan*,
57 Fed. Appx. 694, 696-97 (7th Cir. 2002)("The right to travel
guarantees citizens of one state the right to enter and leave other
states or to be treated as welcome visitors in other states, not
the right to drive a car without a license.") (internal citations
omitted); see also *Williams*, 809 F.3d at 945 (state court dismissal
of the underlying crime for which plaintiff was arrested is
irrelevant to the determination of his federal unlawful arrest
claim).

Because it is undisputed that probable cause existed for the
traffic stop, all of Trigg's remaining federal false arrest claims

---

[4] The vehicle in question turns right onto Wildwood Avenue at
approximately the fifty second mark of the video and activates its turn signal
at approximately the one-minute and one second mark of the video.

[5] See footnote number two, *supra*.

must fail. Once it was established that Officer Shefferly had probable cause for the traffic stop, he could arrest Trigg without violating the Fourth Amendment, even if Trigg was not operating a vehicle after the life suspension of his license for being a habitual traffic offender and/or was not found to be in possession of a Schedule III controlled substance.[6] *Id.* at 943; see also *Jackson*, 627 F.3d at 638–39 ("[A]n arrest is reasonable under the Fourth Amendment so long as there is probable cause to believe that *some* criminal offense has been or is being committed, even if it is not the crime with which the officers initially charge the suspect.") (alteration and emphasis in original) (citation and internal quotation marks omitted)). As such, summary judgment is granted.

### Fourth Amendment Unlawful Search

The Fourth Amendment prohibits warrantless searches, unless the search falls under one of the recognized exceptions to the

---

[6] That said, the Court notes that independent probable cause existed for Trigg's arrest. According to Officer Shefferly's affidavit (as is supported by the supplemental narrative and the video itself), once he made contact with the vehicle, Trigg handed him an Indiana Identification Card as opposed to a driver's license, and Trigg admitted that he did not have a driver's license. (DE #29-1, pp. 2, 4; DE #28.) Officer Shefferly verified through a BMV search that Trigg's status was a Habitual Traffic Violator - Life. (*Id.*) Trigg does not dispute these facts with any admissible evidence, and, in his response brief, he goes so far as to admit that "Trigg knew that his license was suspended for life and that his operating a vehicle was against the law. Probable cause existed for Officer Shefferly to arrest Trigg." (DE #34, p. 7.) Because it is undisputed that probable cause existed for the initial traffic violation, and independent probable cause existed for operating a vehicle without a license, the Court need not discuss Trigg's claims with regard to his possession of a controlled substance arrest. See *Williams*, 809 F.3d at 943.

warrant requirement. *U.S. v. Denney*, 771 F.2d 318, 320 (7th Cir.
1985). Inventory searches constitute one such exception. See *U.S.
v. Cherry*, 436 F.3d 769, 772 (7th Cir. 2006) (citing *U.S. v.
Wilson*, 938 F.2d 785, 788 (7th Cir. 1991)). "Searches conducted by
the police prior to towing a car are lawful if conducted pursuant
to standard police procedures aimed at protecting the owner's
property—and protecting the police from the owner's charging them
with having stolen, lost, or damaged his property." *Id.* (internal
quotation marks and citation omitted). As noted by the Seventh
Circuit, the Supreme Court has recognized that:

> local police departments routinely inventory
> and secure the contents of impounded
> automobiles. Doing so protects the police
> from potential danger, protects the owner's
> property while it remains in police custody,
> and protects the police against claims of
> lost, stolen, or damaged property. An
> inventory search is lawful if (1) the
> individual whose possession is to be searched
> has been lawfully arrested, and (2) the search
> is conducted as part of the routine procedure
> incident to incarcerating an arrested person
> and in accordance with established inventory
> procedures. Both the decision to take the car
> into custody and the concomitant inventory
> search must meet the strictures of the Fourth
> Amendment. The decision to impound (the
> 'seizure') is properly analyzed as distinct
> from the decision to inventory.

*U.S. v. Cartwright*, 630 F.3d 610, 613 (7th Cir. 2010) (internal
citations, quotation marks, and brackets omitted).

Here, Officer Shefferly's affidavit and supplemental narrative
provide that he stopped Trigg for the traffic violation outlined

above, verified through a BMV search that Trigg's status was a Habitual Traffic Violator – Life, and then removed Trigg from the vehicle to conduct a pat down search for weapons and an inventory search of the vehicle because it was going to be towed. (DE #29-1, pp. 2, 4.) Defendants have provided a copy of the FWPD Motor Vehicle Tow and Inventory Policy (the "Policy"), which provides in relevant part:

> I. Purpose:
>
> The purpose of this policy is to provide officers with guidelines for the tow and inventory of motor vehicles. A motor vehicle tow and inventory is proper and warranted when part of a routine administrative caretaking function authorized by the department. It is designed to protect motor vehicles and their contents while in police custody; to protect the department and towing agencies against claims of lost, stolen or damaged property; and to protect departmental personnel and the public against injury or damaged property due to hazardous materials or substances that may be in the vehicle.
> . . .
> III. Procedures:
>
> A. Legal Authority to Inventory Motor Vehicles
>     1. A sworn member of the Fort Wayne Police Department shall conduct a motor vehicle inventory without a warrant and probable cause when;
>         a. The vehicle has been lawfully seized or impounded pursuant to the arrest of the driver.
>         b. The vehicle is impounded for violations.
>     . . .
> B. Scope of Motor Vehicle Inventories
>     1. The contents of all motor vehicles that are lawfully impounded by the department shall be subject to inventory,

in every case, in accordance with the
provisions of the policy.
2. An inventory shall be conducted at the
location where the vehicle is seized
unless it is unsafe or impractical to do
so . . . .
. . .
4. A motor vehicle inventory shall extend
to all areas of the vehicle in which
personal property or hazardous materials
may reasonably be found, including but
not limited to the passenger compartment,
trunk and glove compartment.

(DE #29-3, pp. 1-2.) During the inventory search of Trigg's

vehicle, Officer Shefferly discovered narcotic substances that led

to Trigg's arrest for possession of a Schedule III controlled

substance.[7] (DE #29-1, pp. 1, 4.)

Trigg asserts that the search of his vehicle was unlawful. In

Trigg's response brief, his entire verbatim argument with regard to

this issue is that "[i]n this instance Trigg's vehicle was not in

the custody of the Fort Wayne Police Department at the time of the

---

[7] In his affidavit and supplemental narrative, Officer Shefferly states
that he discovered "a small amount of a white rock like substance in the driver
side door compartment" and "a white pill in the center console inscribed with
'Watson 387' which was identified as Acetaminophen Hydrocodone, a Schedule III
controlled substance." (DE #29-1, pp. 1, 4.) Officer Shefferly further states
that the pill was not contained in the proper container and that Trigg did not
have a valid prescription for the narcotic. (*Id.*) In his affidavit, Trigg
claims that he was "not aware of any drugs or alcohol in my vehicle at the time
of the stop by Officer Shefferly." (DE #33-1.) As Defendants' point out in
their motion to strike, because Trigg's assertion that he was unaware of any
drugs in his vehicle at the time of the stop is directly contradicted by his
prior deposition testimony, it does not create a genuine dispute that would
thwart summary judgment. (DE #36-1, p. 2.) See e.g. *Pourghoraishi v. Flying J,
Inc.*, 449 F.3d 751, 759 (7th Cir. 2006) ("A plaintiff cannot, however, create an
issue of material fact by submitting an affidavit that contradicts an earlier
deposition.") Furthermore, Trigg provides no admissible evidence to dispute
Officer Shefferly's statement that the white pill was not in the proper container
when it was discovered. (DE #36-1, p. 2.) And, more importantly, because
Officer Shefferly already had probable cause to arrest Trigg for the traffic
violations, Trigg's knowledge of any narcotic substances found in the vehicle is
not relevant to the remaining issues at hand.

search.  It was done prior to it being towed.  Also, Plaintiff was physically searched. . . .  Trigg did not authorize or consent to the search of the vehicle or himself."  (DE #34, p. 8.)

Again, Trigg's arguments fail.  As described in the preceding section, Trigg's arrest was lawful.  Furthermore, the search was conducted as part of the Policy in accordance with established inventory procedures designed to protect the vehicle, its contents, the FWPD, and the towing agency.  The Policy provides that an inventory search is proper when a vehicle has been lawfully seized or impounded pursuant to the arrest of the driver.  Because Trigg was arrested, in part, due to his lack of driver's license and status as a Habitual Traffic Violator - Life, it is clear that he could not lawfully drive the car from the scene.  Trigg does not point to any evidence to suggest that he had an alternative in place that would have made towing and impoundment unnecessary.  See *Cartwright*, 630 F.3d at 614.  As such, the Policy authorized Officer Shefferly to conduct the inventory search of the vehicle, and there is no evidence that he did so in an improper manner.  While Trigg argues that the search itself was improper because it was done prior to the vehicle being towed, the Policy clearly provides that the inventory search shall be conducted at the location where the vehicle was seized unless it is unsafe or impractical to do so.  Trigg presents no evidence that it was either unsafe or impractical to conduct the search on the street

where Trigg was stopped.  As such, the Court finds that it is undisputed that Officer Shefferly acted in accordance with the Policy.  Finally, although Trigg makes no such argument to the contrary, the Court finds that the Policy itself is comprehensive and sufficiently standardized.  See *Id*. at 614-15.  As such, summary judgment is granted.


### State Law False Arrest/Imprisonment

In Indiana, "false imprisonment is defined as the unlawful restraint upon one's freedom of movement or the deprivation of one's liberty without consent.  A defendant may be liable for false arrest when he or she arrests a plaintiff in the absence of probable cause to do so." *Earles v. Perkins*, 788 N.E.2d 1260, 1265 (Ind. Ct. App. 2003) (internal citations omitted).  The existence of probable cause dooms a common law action for false arrest and/or false imprisonment.  *Row v. Holt*, 864 N.E.2d 1011, 1016-17 (Ind. 2007).  Because the relevant factors are the same, it is not necessary to separately analyze a claim of false imprisonment that stems from an allegedly false arrest.  *Id*. at 1016 n. 4. Importantly, the Seventh Circuit has recognized that claims of false arrest and false imprisonment brought pursuant to Indiana law require "no different a showing of probable cause" than federal unlawful arrest claims brought pursuant to section 1983 because

"probable cause is an absolute defense" in either context. *Jones*, 737 F.3d at 1114.

Trigg argues that he was falsely arrested and imprisoned without probable cause. Unfortunately for Trigg, as noted in detail in the preceding sections, it is undisputed that probable cause existed to arrest him. Thus, his state law claims of false arrest and false imprisonment must also fail.

CONCLUSION

For the reasons set forth above, the Motion for Attorney Fees and Mileage (DE #20) is **DENIED**, the Motion for Summary Judgment (DE #29) is **GRANTED**, and the Motion to Strike (DE #37) is **DENIED**. All of the plaintiff's claims are **DISMISSED WITH PREJUDICE**. The Clerk is **DIRECTED** to close this case.

DATED: March 21, 2016                     /s/RUDY LOZANO, Judge
                                          **United States District Court**